# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**United States of America,**

      **Plaintiff/Respondent,**

v.                                     Case No. 03-20182-JWL
                                                    04-3436-JWL

**Ronald Yoder,**

      **Defendant/Petitioner.**

## MEMORANDUM & ORDER

Ronald Yoder was named in a six-count indictment filed on November 4, 2002. The indictment charged Mr. Yoder with bankruptcy fraud (Count 1); making false statements in a bankruptcy proceeding (Counts 2, 3, and 4); and fraudulent use of a Social Security number (Counts 5 and 6). On March 5, 2004, Mr. Yoder entered a plea of guilty to Counts 1, 2 and 5 of the indictment. In the plea agreement executed by Mr. Yoder, he waived his right to appeal the sentence imposed or to challenge it through collateral attack. On May 26, 2004, Mr. Yoder was sentenced to a 24-month term of imprisonment. The judgment of conviction was entered on the docket on June 1, 2004. Mr. Yoder did not appeal.

On November 24, 2004, Mr. Yoder filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 14). In his motion, Mr. Yoder asserts that he received ineffective assistance of counsel in that his counsel failed to file a notice of appeal in light of the Supreme Court's grant of certiorari in *Blakely v. Washington* despite Mr. Yoder's request that his counsel do so; his counsel failed to verify whether the indictment represented the "will and

findings" of the grand jury and was not "fraudulently filed by an overzealous, creative, corrupt or oppressive prosecutor"; his counsel failed to object to the presentence investigation report recommending a 7-level increase in offense level based on various enhancements; and his counsel failed to object to various "constructive amendments" to the indictment.  In response to Mr. Yoder's motion, the government filed a motion to enforce Mr. Yoder's plea agreement and waiver of rights (doc. 21).  As set forth in more detail below, the court now denies in part and retains under advisement in part Mr. Yoder's § 2255 motion and retains under advisement in part and grants in part the government's motion to enforce.

**I.     Mr. Yoder's Claim that his Counsel Failed to File a Notice of Appeal**

In his motion, Mr. Yoder asserts that he received ineffective assistance of counsel because his counsel failed to file a notice of appeal in light of the Supreme Court's grant of certiorari in *Blakely v. Washington*.  According to Mr. Yoder, his counsel failed to file a notice of appeal despite "the request and insistence of movant to do so."  In response, the government asserts that Mr. Yoder waived his right to appeal in any event.  As explained below, Mr. Yoder's motion is retained under advisement pending the government's submission of a supplemental brief (to be filed no later than April 29, 2005) addressing the Tenth Circuit's recent opinion in *United States v. Garrett*, ___ F.3d ___, 2005 WL 768761 (10th Cir. Apr. 6, 2005), including whether that panel decision is the Circuit's final word on the issue addressed therein, as well as notifying the court whether a factual dispute exists concerning Mr. Yoder's assertion that he asked his attorney to file a notice of appeal or whether the government concedes that Mr. Yoder requested

that his counsel file a notice of appeal but that his counsel understandably refused to file a notice of appeal in light of Mr. Yoder's broad waiver of his appellate rights. If a factual dispute exists concerning whether Mr. Yoder made such a request, the court will conduct an evidentiary hearing to resolve the dispute, assuming that the *Garrett* opinion still reflects the law in the Tenth Circuit. Moreover, Mr. Yoder, assuming he qualifies under the pertinent rules, will be entitled to the appointment of counsel at such a hearing. *See* Rule 8(c) of the Rules Governing § 2255 Proceedings ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."). If, after the hearing, if any, the court determines that Mr. Yoder made such a request, present Tenth Circuit authority dictates that he is entitled to a delayed direct appeal of his criminal sentence. If, on the other hand, no factual dispute exists concerning whether Mr. Yoder asked his counsel to file a notice of appeal, then Mr. Yoder will be entitled to a delayed direct appeal, again assuming that *Garrett* remains good law in the Circuit.

In *United States v. Garrett*, the defendant filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 asserting that his counsel was ineffective in several respects, including failing to file an appeal despite the defendant's specific request that his counsel file a notice of appeal. ___ F.3d at ___. The government opposed the motion on the grounds that the defendant, in his plea agreement, had waived his right to appeal. *Id*. at ___. The district court denied the defendant's § 2255 motion on the grounds that the defendant's counsel could not "be faulted for failing to file a notice of appeal when the defendant had expressly waived his appellate rights" in connection with the plea agreement executed by the defendant. *Id.* at ___.

3

The Tenth Circuit granted a certificate of appealability (COA) on the issue of "whether counsel for defendant was ineffective for failing to file a Notice of Appeal where defendant had knowingly and willingly waived his right to appeal in a plea agreement." *Id*. at ___. In resolving the COA question, the Circuit began by reviewing the Supreme Court's decision in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), in which the Court held that a lawyer who fails to follow a defendant's express instructions to file a notice of appeal acts in a manner that is professionally unreasonable and that, in such circumstances, a defendant is entitled to appeal without a showing that his appeal likely would have had merit. *Id.* at ___ (citing *Flores-Ortega*, 528 U.S. at 477-78).

The Circuit then examined the waiver executed by Mr. Garrett and noted that while the defendant's appellate rights had been "significantly limited" by his waiver, the waiver did not foreclose all appellate review of his sentence. *Id*. at ___. The Circuit thus held that if the defendant actually asked his counsel to perfect an appeal and his counsel ignored his request, he would be entitled to a delayed appeal "regardless of whether . . . it appears that the appeal will not have any merit." *Id*. at ___; *accord United States v. Snitz*, 342 F.3d 1154, 1157 (10th Cir. 2003) (when courts find that a requested appeal has not been taken, they do not consider the merits of arguments that the defendant might have made on appeal). Finally, the Circuit explained that any resulting criminal appeal would initially be evaluated in light of the defendant's waiver. ___ F.3d at ___. Ultimately, then, the Circuit vacated the district court's order and remanded the case for a hearing to determine whether the defendant requested counsel to file a notice of appeal. *Id.* at ___.

4

In his papers, Mr. Yoder asserts that his counsel failed to file a notice of appeal despite "the request and insistence of movant to do so." While Mr. Yoder, like the defendant in *Garrett*, waived the vast majority of his appellate rights, his waiver does not foreclose all appellate review. In such circumstances, unless the government concedes that Mr. Yoder asked his counsel to file a notice of appeal, *Garrett* (assuming the opinion stands) dictates that the court conduct an evidentiary hearing to resolve the factual issue of whether Mr. Yoder asked his counsel to file a notice of appeal. If the government concedes that no factual issue exists, then Mr. Yoder (again, assuming that *Garrett* remains good law) will be entitled to a delayed direct appeal. Thus, Mr. Yoder's motion and the government's corresponding motion to enforce is retained under advisement with respect to this claim pending supplemental briefing by the government as described above.

## II.   Mr. Yoder's Remaining Ineffective Assistance Claims

Mr. Yoder also claims that his counsel failed to verify whether the indictment represented the will of the grand jury, failed to object to the presentence investigation report recommending a 7-level increase in offense level based on various enhancements and failed to object to various "constructive amendments" to the indictment. In response, the government again relies on Mr. Yoder's waiver of rights in the plea agreement. While Mr. Yoder acknowledges that he waived certain rights, he argues that he is nonetheless entitled to challenge his sentence because he reserved the right to challenge his sentence if the court departed upwards from the applicable sentencing guideline range which, according to Mr. Yoder, occurred in this case. Mr. Yoder

5

further asserts that enforcing the waiver would result in a miscarriage of justice because his sentence exceeds the statutory maximum and because his counsel was ineffective in failing to preserve his right to appeal in light of the fact that the Supreme Court had granted certiorari in *Blakely*. As explained below, the court rejects Mr. Yoder's arguments and concludes that he has expressly waived the right to assert the remaining ineffective assistance claims presented in his § 2255 motion.

The court will hold a defendant and the government to the terms of a lawful plea agreement. *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1207 (10th Cir. 2004); *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998). Thus, a knowing and voluntary waiver of § 2255 rights in a plea agreement is generally enforceable. *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001). The Tenth Circuit has adopted a three-pronged analysis for evaluating the enforceability of such a waiver in which the court must determine: (1) whether the disputed issue falls within the scope of the waiver, (2) whether the defendant knowingly and voluntarily waived his rights, and (3) whether enforcing the waiver would result in a miscarriage of justice. *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).

*A.     Scope of the Waiver*

In determining whether the disputed issue falls within the scope of the waiver, the court begins with the plain language of the plea agreement. *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004); *Hahn*, 359 F.3d at 1328. The plea agreement is construed "according to

contract principles and what the defendant reasonably understood when he entered his plea." *Arevalo-Jimenez*, 372 F.3d at 1206 (internal quotation and citations omitted). The court strictly construes the waiver and resolves any ambiguities against the government and in favor of the defendant. *Hahn*, 359 F.3d at 1343.

The provision in the plea agreement by which Mr. Yoder waived his right to challenge his sentence through collateral attack states as follows:

> Defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection this prosecution and sentence. The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. By entering into this agreement, he knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. He also waives any right to challenge a sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], as well as any motion brought under 18 U.S.C. § 3582(c)(2). In other words, he waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court.

The plea agreement is construed "according to contract principles and what the defendant reasonably understood when he entered his plea." *Arevalo-Jimenez*, 372 F.3d at 1206 (internal quotation and citations omitted). The court strictly construes the waiver and resolves any ambiguities against the government and in favor of the defendant. *Hahn*, 359 F.3d at 1343.

According to Mr. Yoder, the court, in sentencing Mr. Yoder, departed upwards from the applicable sentencing guideline range and, thus, he is free to challenge his sentence under the terms of the plea agreement. Specifically, Mr. Yoder contends that the applicable guideline range "determined in the plea agreement" was 8-14 months and yet the court sentenced Mr. Yoder to 24

7

months, an upward departure from the 8-14 month range. The record belies Mr. Yoder's argument. The plea agreement did not specify that any particular guideline range would apply to Mr. Yoder. In fact, the agreement expressly cautioned that "all relevant criminal activity" would be considered as "relevant conduct" for purposes of calculating the offense level for the counts of conviction, that the sentence to be imposed would be determined solely by the court, and that the government did not make any promises or representations as to what Mr. Yoder's sentence would be. Moreover, the court, in its Rule 11 colloquy with Mr. Yoder, asked Mr. Yoder whether he understood that the applicable guideline range could not be determined until after the presentence investigation, that the presentence investigation would not take place until after Mr. Yoder's plea of guilty had been entered, and that there was no limitation on the information that the court could consider at the time of sentencing, including information relevant to counts or charges to which Mr. Yoder did not plead guilty. Mr. Yoder answered these questions in the affirmative. Thus, it is clear that Mr. Yoder was aware of the contingencies involved in determining his sentence and had no basis to believe that the "applicable sentencing guideline" was 8-14 months. Finally, in the plea agreement, Mr. Yoder reserved the right to challenge a sentence if the court departed upwards "from the applicable sentencing guideline range determined by the court." The court determined that the applicable range was 24-30 months and Mr. Yoder was sentenced within this range. Thus, the reservation of rights set forth in the plea agreement was not triggered.

For the foregoing reasons, the remaining ineffective assistance claims asserted by Mr. Yoder in his § 2255 motion clearly fall within the scope of the broad waiver of rights executed by Mr. Yoder.

B.       *Knowing and Voluntary*

Mr. Yoder does not contend that his waiver was not knowing and voluntary.  Nonetheless, in an abundance of caution, the court briefly analyzes this aspect of the waiver.  In determining that Mr. Yoder's waiver was knowing and voluntary, the court looks no further than the language of the plea agreement and the court's Rule 11 colloquy with Mr. Yoder.  *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004).  Paragraph 13 of Mr. Yoder's plea agreement expressly states that the plea was knowing and voluntary:

> The defendant has had sufficient time to discuss this case, the evidence, and this agreement with his attorney and defendant is fully satisfied with the advice and representation provided by his counsel.  Further, he acknowledges that he has read the plea agreement, understands it and agrees it is true and accurate and not the result of any threats, duress or coercion.  The defendant further understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that this agreement embodies each and every term of the agreement between the parties.  The defendant acknowledges that he is entering into this agreement and is pleading guilty because he is guilty and is doing so freely and voluntarily.

Expressly stated in the plea agreement was the waiver where Mr. Yoder agreed to "knowingly and voluntarily waive[] any right to appeal or collaterally attack any matter in connection with this prosecution and sentence."  In addition, the court, during its Rule 11 colloquy with Mr. Yoder, discussed in detail the fact that Mr. Yoder had waived his right to appeal or otherwise challenge his sentence through a § 2255 motion.  The court's discussion with Mr. Yoder clearly revealed that Mr. Yoder understood the nature of his waiver and voluntarily accepted it with knowledge of the consequences of the waiver.

9

*C.    Miscarriage of Justice*

In his motion, Mr. Yoder contends that enforcing the waiver would result in a miscarriage of justice.  Enforcing a waiver results in a miscarriage of justice only if (1) the district court relied on an impermissible factor such as race, (2) the defendant received ineffective assistance of counsel in conjunction with the negotiation of the waiver, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful in the sense that it suffers from error that seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Hahn*, 359 F.3d at 1327.  According to Mr. Yoder, he received ineffective assistance of counsel in connection with the negotiation of the plea agreement because his counsel should have preserved Mr. Yoder's right to appeal in light of the fact that the Supreme Court had granted certiorari in *Blakely* at the time Mr. Yoder executed the plea agreement.  He further contends that his sentence exceeds the statutory maximum.

The court begins with (and summarily rejects) Mr. Yoder's argument that his sentence exceeds the statutory maximum.  Mr. Yoder pled guilty to bankruptcy fraud in violation of 18 U.S.C. § 157; making a false statement in a bankruptcy proceeding in violation of 18 U.S.C. § 152(3); and fraudulent use of a social security number in violation of 42 U.S.C. § 408(a)(7)(B).  On each of these counts, Mr. Yoder faced a maximum sentence of five years' imprisonment.  Indeed, Mr. Yoder's plea agreement expressly advises that the maximum sentence which may be imposed on each count is "a term of imprisonment which may not be more than five years."  Moreover, the court, during its Rule 11 colloquy with Mr. Yoder, expressly asked Mr. Yoder

10

whether he understood that the maximum sentence he could receive was five years' imprisonment with respect to each count and Mr. Yoder responded that he did understand the statutory maximum. Ultimately, Mr. Yoder was sentenced to 24 months' imprisonment–obviously well below the statutory maximum.[1]

The court turns, then, to Mr. Yoder's ineffective assistance claim. The constitutional right to effective assistance of counsel is defined in *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain habeas relief, a petitioner must establish both that his attorney's representation was deficient, measured against an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *See id.* at 687, 688, 694. Mr. Yoder contends that his counsel should have preserved Mr. Yoder's right to appeal in light of the fact that the Supreme Court had granted certiorari in *Blakely*. At the time Mr. Yoder waived his appellate rights, however, the Supreme Court had not yet decided *Blakely*. As the Tenth Circuit has held, "counsel's failure to foresee future developments in the law does not constitute constitutionally deficient performance." *United States v. Keeling*, 2004 WL 2712627, at *1 (10th Cir. Nov. 30, 2004) (citing *United States v. Gonzalez-Lerma*, 71 F.3d 1537, 1541-43 (10th Cir. 1995)). Thus, Mr. Yoder's counsel's negotiation of a plea agreement that included a waiver of the right to file an appeal at a time that pre-dated *Blakely* does not constitute ineffective assistance of counsel under Tenth Circuit precedent. Mr. Yoder, then, cannot satisfy the first prong of *Strickland*.

---

[1] To the extent that Mr. Yoder means to argue that his sentence was above the applicable guideline range, this argument also lacks merit, as discussed earlier in this opinion.

For the foregoing reasons, enforcing Mr. Yoder's waiver with respect to his remaining ineffective assistance claims will not result in a miscarriage of justice.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Yoder's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 14) is denied in part and retained under advisement in part.  The government's motion to enforce the plea agreement (doc. 21) is retained under advisement in part and granted in part.

**IT IS FURTHER ORDERED BY THE COURT** that the government shall file a supplemental brief addressing the issues described in this order no later than April 29, 2005.

**IT IS SO ORDERED** this 12th day of April, 2005.

> s/ John W. Lungstrum
> John W. Lungstrum
> United States District Judge